[No. 24097. Department One. January 5, 1933.]

SIXPINE LEASEHOLDERS, INC., *Respondent,* v. SEATTLE RECREATION COMPANY *et al., Appellants.*[1]

[1]Reported in 18 P. (2d) 12.

*Charles E. Congleton* and *Meier & Meagher,* for appellants.

*Jay C. Allen,* for respondent.

MILLARD, J.—This action was brought by a landlord to establish and foreclose a lien for rent. A writ was levied, attaching the personal property on the leased premises. That personal property, the purchase price of which had not been paid, was in the possession of the tenant under a duly recorded conditional sales contract with the Brunswick-Balke-Collender Co. Upon application of plaintiff landlord, the court entered an order appointing a receiver to take possession of the attached property and the leased premises and to operate the business of the tenant and to collect the revenue therefrom. The defendants (plaintiff's tenant and the conditional sales vendor of the property attached) have appealed from the order appointing a receiver.

On September 1, 1928, respondent's predecessor in interest executed a twenty-year lease of the second, third and fourth floors of a building in Seattle, to the Seattle Recreation Co. The stipulated annual rental was $26,448, payable $2,204 in advance on the fifteenth of each month. At an expense of approximately one hundred thousand dollars, the recreation company installed in its leased portion of the building thirty-two bowling alleys, thirty-six billiard tables

and other recreational equipment. The bowling and billiard equipment, for which the recreation company has not yet paid, was purchased on conditional sales contract (duly recorded as required by the statute) from the Brunswick-Balke-Collender Co.

On March 1, 1932, the respondent landlord brought this action against its lessee and the lessee's conditional sales vendor, to recover one month's unpaid rental due February 15, 1932, and to establish and foreclose a landlord's lien in that amount ''upon all of the furniture, fixtures, apparel and property now in the said premises.'' A later (May 7, 1932) amended and supplemental complaint prayed judgment for three month's unpaid rental and a decree establishing and foreclosing a landlord's lien for two month's rental. The conditional sales vendor was joined as a party defendant for the reason, the respondent alleged, that it claimed an interest in the premises and had agreed with its vendee to pay the monthly rental as it accrued. The respondent filed an attachment bond in twice the amount of one month's rental, and the sheriff levied a writ of attachment upon all the personal property except the contents of the safe and the merchandise (candy, cigarettes and cigars) on the premises. A deputy sheriff was placed on the premises to prevent removal of any of the attached property.

The affidavits in support of respondent's application for appointment of a receiver are summarized as follows: The Seattle Recreation Co. was insolvent; the recreation company was a going concern, taking in approximately two hundred dollars daily in gross receipts; the value of the attached personal property would be depreciated if removed from the building;˙ the conditional sales vendor of the attached property

was a foreign corporation; it was impossible for the respondent to ascertain, with any degree of certainty, the respective rights of the two appellants in the attached property.

The gist of the controverting affidavits is: The attachment was not valid, as the sheriff did not take manual control or custody of the property; the tenant had a meritorious defense to the action for rent, by reason of the lessor's breach of the contract to complete the building in accordance with the specifications and plans, with resultant damage to the tenant; the levy was excessive, as among the property attached were thirty-six billiard tables, each of the value of one thousand dollars when new, and property of sufficient value could be segregated from the attached property to satisfy the lien of the respondent; neither appellant was insolvent; the tenant had not paid for the attached property, which was in its possession under a duly recorded conditional sales contract with the other appellant, which had no agreement with its vendee to pay the monthly rental.

It is unnecessary to recite the other steps in the action. The motion to dissolve the attachment was denied, and an order was entered, as above recited, appointing a receiver. It is from that order the appeal is prosecuted.

It does not appear that either appellant was insolvent. There is no showing, other than a recital in one of the affidavits filed in behalf of the respondent, that the conditional sales vendor agreed with its vendee to pay the monthly rental as it accrued. Our disposition of the appeal renders it unnecessary to discuss the question whether, under such a contract, any rights would inure to the benefit of the respondent. It was clear from the beginning of the action, and

the receiver in his first report so stated on May 28, 1932, that all of the bowling and billiard equipment was covered, as appellants alleged, by conditional sales contracts, which had been placed of record as the statute requires, and that a large unpaid balance was due thereon.

Appellants argue that, under the statute (Rem. Rev. Stat. § 1203-1) such property was not subject to a lien for rent due by the vendee to the landlord. Appellants also insist that the personal property attached was worth many times the amount of the recovery sought, and that it would not have been difficult to segregate from that property sufficient to satisfy the respondent's lien; that a levy is excessive if made on different pieces of personal property which are easily capable of segregation and are worth many times the amount of rental claimed to be due.

Assuming, but not deciding, that the attachment was valid, did the court err in appointing a receiver to manage the tenant's business and to apply the revenue therefrom to the satisfaction of the landlord's lien for rent? Or, may a landlord so seize the leasehold and the tenant's business and thus evict a tenant for non-payment of rent?

Neither appellant was insolvent. Respondent did not seek the appointment of a receiver for either of appellant corporations. Both appellants deny indebtedness to the respondent. The action was solely to establish and foreclose a landlord's lien for rent, a lien which attaches at the beginning of the tenancy, and for the enforcement of which the remedy of levy by attachment is available. The only property to which the lien of a landlord attaches is the personal property which has been used or kept on the rented premises by the tenant, and that lien may be enforced

in the same manner as the foreclosure of a chattel mortgage.

"Any person to whom rent may be due . . . shall have a lien for such rent upon personal property which has been used or kept on the rented premises by the tenant, except property of third persons delivered to or left with the tenant . . . under conditional bills of sale duly filed, . . ." Rem. Rev. Stat., § 1203-1.

"Said lien may be enforced in the same manner as the foreclosure of a chattel mortgage in the superior court of the county in which the property or any portion thereof is situated." Rem. Rev. Stat., § 1203-2.

Unless there is statutory authority therefor, a general contract creditor cannot, before judgment, have a receiver appointed against his debtor on whose property the creditor has acquired no lien.

"Until a creditor has obtained a judgment at law for his demand against the debtor, and the return of an execution unsatisfied, an action in equity will not lie to reach assets and apply them to the payment of a moneyed demand arising upon a contract, express or implied. Allegations of insolvency do not change this rule." *Grays Harbor Commercial Co. v. Fifer,* 97 Wash. 380, 166 Pac. 770.

Our receivership statute, enacted in 1854, provides that a receiver may be appointed by the court in certain cases—the case at bar is not within the enumerated classes—"(6) And in such other cases as may be provided for by law . . ." Rem. Rev. Stat., § 741.

In 1886, the legislature passed a statute which, the respondent contends, authorizes the appointment of a receiver in aid of attachment, as in the case at bar. That statute reads as follows:

"*The court* before whom the action is pending, or the judge thereof, *may* at any time *appoint a receiver to take possession of property attached* under the pro-

visions of this chapter, and to collect, manage, and control the same, and pay over the proceeds according to the nature of the property and the exigency of the case." Rem. Rev. Stat., § 661. (Italics ours.)

In the absence of statutory authority, a landlord would have no lien for rent upon any property of his tenant. 16 R. C. L. 975. Other than the limited rights granted by the lien statute (Rem. Rev. Stat., § 1203-1), a landlord has no security for the collection of rent. The statute expressly, specifically, definitely limits the landlord's lien for two months' unpaid rent to the tenant's personal property used or kept on the rented premises by the tenant. To establish and foreclose such a lien, was the purpose of respondent's action. To enforce its lien, the respondent landlord caused a writ of attachment to be levied upon all of the personal property used on the leased premises by the respondent's tenant.

The court was authorized under the statute (Rem. Rev. Stat., § 661), as respondent insists, to appoint a receiver to take possession of the property attached. However, nowhere in the attachment statute, the landlord's lien statute, or any other statute of this state, are we able to find authority for the seizure of the leasehold and the appointment of a receiver to manage the business of the debtor tenant. We have no statute authorizing such attachment creditor to attach a going business and to operate it.

The respondent's argument is similar to that of the respondent in *Gahagan v. Wisner,* 139 Wash. 664, 247 Pac. 965, which was an action to foreclose a chattel mortgage and appoint a receiver. In the case at bar, the respondent contends that the attached property would have but little value if removed from the leased premises; that its value is due to the fact that it is being used in a going business; and that, if the place

of business were closed and the personal property removed, the respondent would be greatly damaged. In the case cited, the opinion states that the respondent mortgagee

". . . alleged that, if the furniture were taken or removed from the premises, it would have but little value; that its main value lies in the fact that it is furniture in a going hotel, and that, if the defendants are permitted to continue using the furniture during the foreclosure proceedings, the security will be greatly lessened, and, if the hotel is closed or the furniture removed, the plaintiff would be greatly damaged."

We held in that case, which is not distinguishable in principle from the case at bar, that the appointment of a receiver was not justified, inasmuch as there was no showing that the mortgagor was using the mortgaged property in any way other than as was usual in the operation of the hotel, or that she was threatening to remove the furniture, or was damaging it, or permitting waste. We also said that the appointment of a receiver would not materially assist the mortgagee, but would be a great detriment to the mortgagor, who would be dispossessed of her property and probably have to bear the burdensome expenses of the receivership.

There was no showing that the appointment of a receiver to manage the business of the appellant tenant was necessary. Inasmuch as the remedy of levy by attachment enabled the landlord to enforce its lien and reach the property sought, there was no legal justification, other than to take possession of the property attached, for the appointment of a receiver. *Grays Harbor Commercial Co. v. Fifer,* 97 Wash. 380, 166 Pac. 770.

We cannot agree with respondent that the question as to the court's authority to appoint a re-

ceiver to manage the tenant's business is now moot. We do not find that, pursuant to stipulation between the parties, the receiver, on July 16, 1932, surrendered possession of the property covered by the conditional sales contract to the Brunswick-Balke-Collender Co. Nor does our examination of the record disclose that the appellants consented to sale by the receiver of as much of the attached personal property of the Seattle Recreation Co. as it was possible to sell, and storage of the remainder. We read the following in respondent's brief:

"The administration of the receiver has now reached a place where practically nothing remains to be done but to hold a small amount of personal property and funds in custody pending the disposition of respondent's action to foreclose its lien for rent and then for the receiver to be discharged."

In effect, respondent argues that the question as to the authority of the court to appoint the receiver to manage the tenant's business is moot, inasmuch as the receiver was appointed and the final report of that receiver was approved by the trial court. Not so. If that were the law, then the seizure of property under an erroneous order of the court and the disposition of that property to the injury of the complainant would effectually deprive the victim of his property without chance of redress if the trial court entered an order approving such erroneous proceeding. The status of the subject matter of the controversy was changed by the respondent pending the appeal, and without fault on the part of the appellants. The judgment, if left unreversed, will foreclose the right of the appellants to require the respondent to undo, so far as possible, the wrong it has done.

"It is true that when, pending an appeal from the judgment of the lower court, and without any fault on the part of the respondent, an event occurs which ren-

ders it impossible to enter a judgment in favor of the appellant which will give any effectual relief, the court will not proceed to a formal judgment but will dismiss the appeal; and it is held, also, that the same result will follow if the intervening event is owing to some voluntary act of the appellant. But no such result follows merely because the respondent has changed the status of the subject-matter in litigation. So in this case, if it appears that the contract entered into was subject to be enjoined because in violation of the statutes, the court may now inquire into the subsequent acts of the respondents and compel them to undo what they have wrongfully done, in so far as it is capable of undoing, and to answer in damages for anything that cannot be undone." *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226.

The order is reversed.

TOLMAN, C. J., PARKER, and MITCHELL, JJ., concur.