HAMBURGER APPAREL COMPANY, *Appellant*, v. ESTA
WERNER *et al., Defendants,* BANKERS LIFE
COMPANY OF IOWA, *Respondent.*[1]

[1]Reported in 135 P. (2d) 311.

*Congdon & Clemans* and *J. Will Jones,* for appellant.

*Bogle, Bogle & Gates* and *Ray Dumett,* for respondent.

BEALS, J.—Hamburger Apparel Company, a foreign corporation, authorized to carry on business in the state of Washington, October 16, 1941, filed its complaint in this action against Esta Werner, as defendant, alleging that the defendant had been conducting, in the city of Seattle, a retail women's ready-to-wear shop, and that plaintiff, within three years prior to the filing of the complaint, had sold to defendant merchandise on account of which there was due to plaintiff from defendant $1,185.35; that defendant, prior to October 14, 1941, had converted a large portion of her stock of merchandise into cash, and, on the date mentioned, had made an assignment for the benefit of her creditors, and departed from the jurisdiction, taking with her a large amount of cash, being the proceeds of her stock; that the whereabouts of defendant was unknown, but that she had no intention of returning to the state of Wash-

ington. Plaintiff prayed for judgment against the defendant, and that a receiver be appointed to take possession of such assets as could be found.

November 6, 1941, plaintiff filed an amended complaint, naming as an additional defendant, Bankers Life Company, a corporation engaged in the insurance business, and on the same date an order was entered bringing in that corporation as an additional defendant to the action. In its amended complaint, plaintiff, in its first cause of action, repeated the allegations of its original complaint, asking judgment against Werner for $1,551.50, and its second cause of action alleged that it had delivered to Werner certain merchandise on consignment, and that defendant Werner had sold certain of this merchandise and converted $148.45 of the proceeds thereof to her own use. In a third cause of action, it was alleged that, with intent to defraud her creditors, including plaintiff, Werner purchased from defendant insurance company an insurance policy, the exact terms of which were to plaintiff unknown, but that she was named in the policy as sole beneficiary thereof; that the policy was issued to Werner while she was, to her knowledge, insolvent, and was procured by her with intent to defraud her creditors, and to create an estate for herself which her creditors could not attach; that Werner paid to the insurance company, by way of premiums, while she was insolvent and indebted to plaintiff, sums aggregating eighteen hundred dollars; that, in addition to the sums paid to the insurance company by Werner, the insurance company had in its possession or under its control Werner's interest in the value, proceeds, and avails of the insurance policy, which should be made available to plaintiff for the payment of its claim, and available to other creditors of Werner.

It is further alleged that, at plaintiff's instance, a receiver had been appointed for the business thereto-

fore conducted by Werner, and that the receiver had qualified and was in possession of the remnants of Werner's business, left when she abandoned the same and departed for parts unknown.

Plaintiff prayed for judgment against Werner for the two items above referred to, and against defendants Werner and the insurance company for the value, proceeds, and avails of any insurance policy or policies written by defendant insurance company in favor of Werner, and that the receivership be extended to include such items.

No personal service of process has ever been had upon the defendant Werner. The summons and amended complaint were served upon the additional defendant, Bankers Life Company, by delivering a copy of the summons and amended complaint, personally, to the insurance commissioner of the state of Washington, the statutory attorney of the insurance company. Service was also made upon a local agency manager of the insurance company.

The insurance company appeared specially and moved to quash the service of process, which motion was denied. The court did not err in denying the motion to quash service. Rem. Rev. Stat., §§ 7044, 7045 [P. C. §§ 2920, 2920a]; *Dittenhoefer v. Coeur d'Alene Clothing Co.,* 4 Wash. 519, 30 Pac. 660; *Lyden v. Western Life Indemnity Co.,* 204 Fed. 687. The company then, still preserving its special appearance, demurred to the amended complaint on several grounds, among them that the court had acquired no jurisdiction of the insurance company nor of the subject matter of the action; that there was a defect of parties defendant; that several causes of action had been improperly united; and that the amended complaint failed to state facts sufficient to constitute a cause of action against the insurance company. After argument, the

demurrer was sustained, and, plaintiff having elected to stand upon its amended complaint, an order was entered dismissing the action, from which plaintiff has appealed.

Error is assigned upon the entry of the order sustaining the insurance company's demurrer, and upon the entry of judgment dismissing the action as to that defendant.

In considering the questions here presented, several facts must be borne in mind: First, that appellant has never caused process to be personally served upon defendant Esta Werner; second, that no writ of attachment or writ of garnishment has ever been issued in this action, nor has appellant ever acquired any lien upon the policy of insurance in question or any interest therein; third, that the only information available concerning any policy of insurance which defendant Werner may have procured from the insurance company is contained in appellant's amended complaint, in which it is alleged that Werner

". . . purchased from the defendant, Bankers Life Company of Iowa, and the said defendant, Bankers Life Company of Iowa, delivered to said defendant, Esta Werner, an insurance policy, the exact nature of which insurance policy is to the plaintiff unknown; that plaintiff is informed and believes and therefore alleges that said policy of insurance was purchased by said defendant to create for herself an estate, and that she is named in said policy as the sole beneficiary, and that she is the sole beneficiary of said policy."

Whether such a policy, if issued, is still in effect, we do not know, and it is not easy to imagine the nature of a policy issued by a life insurance company in which the insured is the sole beneficiary, unless such a policy be an annuity policy only. The broad allegations of the amended complaint may be considered as alleging that Werner purchased from respondent a policy of

life insurance which provides for some benefits to accrue to herself, either by way of annuity, endowment, or under some contract of a similar nature.

■ Respondent argues that any insurance which Werner may have procured is not subject to the payment of her debts, under Rem. Rev. Stat., § 569 [P. C. § 7854-1], and Rem. Rev. Stat. (Sup.), § 7230-1 [P. C. § 7854-2]. The first section referred to exempts the proceeds or avails of all accident and health insurance from all liability for any debt of the insured; while the other section cited provides, in part:

"If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life, or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person."

The section contains a proviso to the effect that

". . . subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specification of the amount claimed."

Under the law as it existed prior to the 1927 amendment, this court held that the proceeds of endowment policies are exempt. *Flood v. Libby,* 38 Wash. 366, 80 Pac. 533, 107 Am. St. 851. The more recent case of *Turner v. Bovee,* 92 F. (2d) 791, is to the same effect.

It has also been held that the fact that the policy may have a cash surrender value will not vest creditors of the insured with any right to obtain relief against the policy, if the beneficiary named in the policy be other than the insured. *Flood v. Libby, supra; Murphy v. Casey,* 150 Minn. 107, 184 N. W. 783; *Van Dyke Co. v Moll,* 241 Mich. 255, 217 N. W. 29, 57 A. L. R. 692; *Farmers & Merchants Bank v. Nat. Life Ins. Co.,* 161 Ga. 793, 131 S. E. 902, 44 A. L. R. 1184, and annotation following.

Under the allegation of appellant's complaint, that Werner is sole beneficiary under the policy, it does not appear that the policy is exempt under Rem. Rev. Stat. (Sup.), § 7230-1 [P. C. § 7854-2], *supra.* Appellant contends that it may also establish some rights under the proviso to that section, above quoted. It is not necessary to discuss the nature of the rights which a creditor of the insured might establish against a life insurance policy upon the life of his debtor. No such question need be considered on this appeal.

Appellant seeks to reach Werner's interest in the insurance policy by means of a creditor's bill, which is an equitable action sometimes available to a creditor to reach assets of a debtor not by law exempt, but which cannot be reached by ordinary legal process. The action is defined in general terms in 15 C. J. 1380, § 1, as follows:

"Generally defined, creditors' suits or bills are bills in equity filed by creditors to enforce the payment of debts out of property of debtors under circumstances which impede or render impossible the collection of

the debts by the ordinary process of execution . . . , to compel the discovery and application to the payment of debts of so-called equitable assets or property which cannot be reached by the process of levy and sale or execution at law."

■■ The general rule is that the creditor must have reduced his claim to judgment before such a remedy is available to him. 21 C. J. S. 1077, § 41; 1078, § 43. Some courts have recognized an exception to this rule, where the debtor is a nonresident, or for some other reason cannot be served with process. 21 C. J. S. 1081, § 45. Of course, in the case at bar, appellant alleges that its debtor, Werner, is a nonresident, and that her whereabouts is unknown to appellant.

In the case of *Knettle v. Knettle,* 164 Wash. 468, 3 P. (2d) 133, a creditor sought by an equitable action to subject a trust fund to the payment of a judgment against a beneficiary. In that case, the creditor had procured a judgment against his debtor, and this court held that in such a situation the statutory proceeding supplemental to execution had superseded the remedy formerly available by way of a suit in equity. The court, however, chose to consider the equitable action as a proceeding supplemental to execution, and decided the case upon the merits, distinguishing cases which had been decided prior to the enactment of the present statute affording a judgment creditor relief against third parties by way of a proceeding supplemental to execution.

In the early case of *Murne v. Schwabacher Bros. Co.,* 2 Wash. Terr. 130, 3 Pac. 899, the court said:

"This supplemental proceeding is of equitable jurisdiction, intended to serve the end of a creditor's bill."

The recent case of *Junkin v. Anderson,* 12 Wn. (2d) 58, 120 P. (2d) 548, 123 P. (2d) 759, is to the same effect.

Concerning creditors' bills, the statutes of the several states differ, and decisions from other jurisdictions are, for that reason, seldom helpful. The general rule is that, before a creditor may seek relief in equity by way of a creditor's bill, he must have reduced his claim to judgment, or in case of a nonresident debtor, subjected property belonging to the debtor to an attachment or garnishment.

In the case of *Roberts v. Buckingham,* 172 Cal. 458, 156 Pac. 1018, the supreme court of California stated that a complaint asking for a money judgment against B, alleging that B was a nonresident of the state, and that, prior to the institution of the action, B, for the purpose of defrauding plaintiff and other creditors, conveyed certain real estate to W, and asking that the deed to W be declared fraudulent and void as against plaintiff, was defective because it did not allege that plaintiff had established his debt against B by reducing the same to judgment, or that the plaintiff had obtained some specific lien, as by attachment, upon the property described. As the defendant appeared in the action, full relief was granted to the plaintiff, but the court clearly stated the correct rule as to allegations necessary to state a cause of action.

In 7 Cal. Jur. 793, § 6, the general rule that a creditor must reduce his claim to judgment before seeking the aid of equity is stated, and supported by numerous citations. On p. 794 the exception is stated as follows:

"But the rule requiring judgment is not without exception. Thus, where the debtor is a nonresident and in consequence no judgment can be obtained against him, the creditor may maintain a creditor's suit without having reduced his claim to judgment. In such cases, however, the creditor must have obtained a lien by attachment."

In the case of *Buckley v. Maupin,* 344 Mo. 193, 125 S. W. (2d) 820, the supreme court of Missouri, in

affirming the judgment of the trial court dismissing an action upon sustaining a demurrer to a complaint in equity in the nature of a creditor's bill, said:

"The general rule, therefore, is that 'only judgment creditors and those who have a legal or equitable lien on the property, and under the statutes of this State creditors who have commenced attachment suits against the property, can maintain an action to set aside a fraudulent conveyance, and they can do so only when they allege and prove that they have no adequate remedy at law.' [*Coleman v. Hagey*, 252 Mo. 102, 126, 158 S. W. 829, 836; *Daggs v. McDermott*, 327 Mo. 73, 34 S. W. (2d) 46, and cases there cited]. There is no claim of either a legal or equitable lien in the instant case nor is attachment involved. In such a situation it is elementary that the creditor must establish his claim at law before he can have relief against his debtor in equity. [12 R. C. L. 626]."

■ In the case at bar, we are urged to consider appellant's complaint against respondent as in the nature of a garnishment, appellant having been unable to serve defendant Werner with process. In this connection, appellant states that its action against respondent "is in the nature of a sequestration or garnishment proceeding." This statement is correct.

In the case of *Flood v. Libby*, 38 Wash. 366, 80 Pac. 533, this court held that a creditor could not, by a proceeding in essence a garnishment, obtain greater relief than was available to him under the statutory writ. In the case of *Sweet v. Oliver*, 56 Iowa 744, 10 N. W. 275, it was held that the function of the writ of garnishment could not be enlarged by a so-called proceeding in equity.

While in the *Knettle* case, *supra*, this court treated an equitable action as a proceeding supplemental to execution, the same liberal practice cannot be here applied, as, under the statute providing for the issuance of writs of garnishment (Rem. Rev. Stat., §§ 680, 681

[P. C. §§ 7999, 8000]), certain steps must be taken by the garnishor, including, under the circumstances here present, the filing of a bond in favor of the debtor. This statute cannot be avoided by the subterfuge of bringing an equitable action against one alleged to be indebted to the principal defendant, or to have property in his possession belonging to the debtor.

Under the circumstances here shown, a creditor's bill may not be substituted for the statutory writs of attachment or garnishment, remedies apparently available to appellant, whereby appellant might obtain a claim against, or lien upon, specific property belonging to defendant Werner, and thereby acquire the right to subject that property to any judgment which appellant might obtain against Werner.

In any event, we are convinced that the better rule is that a creditor's bill or an analogous equitable proceeding may not be maintained unless the creditor has a valid judgment against his debtor, or has in some manner secured a lien upon his debtor's property by way of an attachment, garnishment, or otherwise. In the case at bar, appellant has not caused process to be served upon his debtor, nor does it appear that appellant has in any manner attached any of his debtor's property, nor does appellant allege that he has any lien thereon.

In the case of *Grays Harbor Commercial Co. v. Fifer*, 97 Wash. 380, 166 Pac. 770, this court held that the statute authorizing the appointment of a receiver for the property of an individual (a different rule applying to corporations) did not enlarge the remedies available to a creditor, or vest him with any right he would not otherwise have to seize his debtor's property, a receivership being merely ancillary to the main action, and not an independent remedy. The appointment of a receiver is merely incidental to an action brought to

obtain relief which the court has jurisdiction to grant, the incidental remedy not being available as a method by which the rights of the parties may be determined. In the course of the opinion, the court said:

"Until a creditor has obtained a judgment at law for his demand against the debtor, and the return of an execution unsatisfied, an action in equity will not lie to reach assets and apply them to the payment of a moneyed demand arising upon a contract, express or implied. Allegations of insolvency do not change this rule."

The case of *Blum v. Rowe,* 98 Wash. 683, 168 Pac. 781, is to the same effect, citing the case of *Wiggins v. Armstrong,* 2 Johnson's Chancery 144, in which the court, speaking through Chancellor Kent, said that, unless the plaintiff "has a certain claim upon the property of the debtor, he has no concern with his frauds."

In the case of *Sixpine Leaseholders v. Seattle Recreation Co.,* 171 Wash. 139, 18 P. (2d) 12, we held that, in the absence of statutory authority, a general creditor cannot, before judgment, procure the appointment of a receiver for property of his debtor, until the creditor has acquired a lien thereon. The case of *City Mortgage Co. v. Skartvedt,* 176 Wash. 463, 29 P. (2d) 928, is to the same effect.

The opinion of this court in the case of *State ex rel. Arine v. Superior Court,* 132 Wash. 258, 231 Pac. 785, contains language out of line with our other decisions. In that case, however, it appears that the debtor, in open court, consented to the appointment of a receiver, which afforded sufficient ground for the action taken.

In the case of *Thompson v. Adams,* 60 W. Va. 463, 55 S. E. 668 (cited in the case of *Grays Harbor Commercial Co. v. Fifer, supra*), it appeared that the defendant, being heavily in debt, had absconded, leaving considerable property which was suffering waste. The creditor

asked for the appointment of a receiver. The court denied the relief demanded, saying, in the course of the opinion:

"The question which meets us at the threshold of this case is one of jurisdiction. The plaintiff claims to be only a common creditor of the defendant, Adams. He has no lien against him, and avers no ground of equity jurisdiction. The pretentious ground set up is that Adams has left the county and cannot be found; that he owns large real estate and personal property; that he is largely indebted, and that his property is going to waste. This does not entitle him to come into equity and ask for a receiver. He has shown no right to charge the property. He is only a common creditor, and as such equity will not entertain him. He must first reduce his claim to a judgment, or lien, after which if he files his bill and shows reasons why the court should take charge of the property, a receiver will be appointed. Under our statute [Code 1899] § 28, chapter 133, [Ann. Code 1906] § 4031 annotated Code a receiver will be appointed, where there is danger of loss or misappropriation of the property or a material part thereof, of a debtor, but this is only done in a proper pending case. It certainly must be at the instance of some one who has a right to charge the property, and the statute does not mean to extend this remedy to every one who claims to be a common creditor. Equity must have jurisdiction independent of the appointment of a receiver."

The same rule was recognized in the case of *Nolte v. Hudson Nav. Co.*, 31 F. (2d) 527.

Appellant has no judgment against Werner, nor had it served process upon her personally in this action, thereby vesting the trial court with jurisdiction to enter judgment generally against her. Neither has appellant, by attachment, garnishment, or otherwise, obtained any lien on property in respondent's possession or under its control, which appellant might, by publication of a summons against Werner, subject to appel-

lant's claim against her by means of an appropriate judgment. Upon the record before us, such an equitable action as this may not be maintained.

For the reasons stated, appellant's complaint fails to state facts sufficient to constitute a cause of action against respondent, and the judgment of the trial court is accordingly affirmed.

SIMPSON, C. J., MILLARD, ROBINSON, and GRADY, JJ., concur.

